930 F.2d 33
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Gloria J. GALLOWAY, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 90-5101.
 United States Court of Appeals, Tenth Circuit.
 April 9, 1991.
 
 Before LOGAN, JOHN P. MOORE and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Claimant Gloria J. Galloway appeals from the district court's judgment affirming the Secretary of Health and Human Services' denial of her application for Supplemental Security Income benefits. The application was denied initially and on reconsideration. Claimant subsequently requested and received a hearing before the Administrative Law Judge (ALJ). The ALJ denied claimant's application for benefits, and the Appeals Council denied her request for review. The district court affirmed the Secretary's decision denying benefits. Claimant appeals, asserting: (1) the decision of the Secretary was not based on substantial evidence, (2) the ALJ should have elicited the opinion and testimony of a vocational expert, and (3) the ALJ erred in his evaluation of her credibility as to her complaints of pain. We affirm.
 
 
 3
 Our review of the Secretary's decision is limited to determining whether the decision is supported by substantial evidence. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Evidence is not substantial if it is overwhelmed by other evidence in the record or if it constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir.1989). In order to determine whether the Secretary's decision is supported by substantial evidence, we must meticulously examine the record. However, we may not reweigh the evidence, nor substitute our discretion for that of the Secretary. Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir.1983).
 
 
 4
 Claimant, a thirty-eight year old woman with a high school education, claims disability since December 1, 1983, due to problems with her back, pain and swelling in her knees, and headaches. Claimant, appearing at the hearing pro se, was advised by the ALJ of the nature of the proceedings and of her right to counsel. Claimant's pro se status places a duty on the ALJ to "scrupulously and conscientiously" develop the record so that claimant receives a "full and fair" hearing. Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir.1984).
 
 
 5
 The ALJ ascertained, through claimant's testimony, that she had a very limited work history outside the home. She had worked as an electrician's helper for a period of approximately six months. She further reported working as a cook in 1987 for approximately one month. She testified that she terminated both jobs due to high blood pressure and swelling in her knee. Although there appears to be some confusion on claimant's part as to when she held these jobs, the ALJ concluded that both periods of employment took place during the period for which claimant claims disability.
 
 
 6
 The ALJ questioned claimant regarding her daily activities and although she claimed she spent a majority of her time watching television, she did state that she tended to her own personal hygiene, washed dishes, did some cooking, and until the year before, had driven a car. During her application interview in December, 1987, she stated she also did laundry and cleaned house. Although the ALJ noted that claimant came into the hearing without a cane and appeared to have no trouble walking unassisted, she stated she needed the use of a cane for walking while at home. She reported to the ALJ that she had falling episodes which started approximately one and one-half years before, but there was no evidence that she had ever reported these episodes to a physician.
 
 
 7
 Claimant stated that her treating physician, Dr. Patricia Wright, had suggested she seek evaluation and treatment at the mental health clinic because her problems were "all in her mind." Rec.Vol. I, Tr. at 38. However, there is no evidence that claimant ever sought such treatment. She stated that she wears a TNS unit for pain in her shoulder, but also uses it for pain in her knees. When asked by the ALJ whether she experiences pain frequently, she answered in the affirmative. The evidence showed that claimant takes Darvocet N-100, Sechral, Xanex, and Flexeril, all prescribed by Dr. Wright.
 
 
 8
 When examined by a consulting physician on September 7, 1987, claimant stated she had not seen either of her treating physicians, Dr. Duncan or Dr. Wright, for over one year. Although claiming disability due to headaches, at the time of the examination by the consulting physician, claimant denied any history of headaches. She exhibited a normal range of motion to her shoulders, elbows, wrists, and fingers, and also to the lower joints of hips, knees, ankles, and feet. Although the consulting physician acknowledged her complaint of left knee pain and diagnosed a mild amount of crepitance, he found a full range of motion and no inflammation. He found the back and spine to be normal in all respects. He concluded that claimant suffered from a mild softening of the cartilage (chondromalacia) of the left knee. Rec.Vol. I, Exh. 15 at 88-89.
 
 
 9
 On November 23, 1987, Dr. Wright wrote a one-page "to-whom-it-may-concern" letter stating that claimant was currently suffering from hyperventilation syndrome, paresthesias in her extremities making ambulation for long distances difficult, and stated that claimant was in "urgent" need of evaluation and treatment by a mental health clinic. Rec.Vol. I, Exh. 16 at 91. Claimant was to have a follow-up appointment with Dr. Wright on December 22, 1987. Dr. Wright's records indicate claimant failed to keep this appointment. The record is also void of any evidence that claimant sought the mental health evaluation recommended by Dr. Wright. Dr. Wright's full physical examination of claimant in January, 1986, diagnosed claimant as suffering from lumbar strain, probably degenerative joint disease of the left knee, hiatal hernia, and low serum iron. None of these ailments comport with those listed by Dr. Wright in her letter in November, 1987.
 
 
 10
 Although a treating physician's opinion must be given deference over that of a consulting physician employed by the government, it may be disregarded "if it is brief, conclusory, and unsupported by medical evidence." Frey v. Brown, 816 F.2d 508, 513 (10th Cir.1987). "If the opinion of the claimant's physician is to be disregarded, specific, legitimate reasons for this action must be set forth." Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir.1984). The ALJ in this case carefully and fully stated his reasons for not giving great weight to Dr. Wright's opinion. He correctly concluded that the only objective medical data completed by Dr. Wright, during the years that she treated claimant, was a laboratory finding of a hiatal hernia in 1985. Rec.Vol. I, Decision at 13. Dr. Wright never stated that it was her opinion that claimant was disabled, and no objective medical evidence was provided to support any of Dr. Wright's diagnoses as to claimant's alleged physical or mental impairments.
 
 
 11
 The five steps which the Secretary must consider in determining disability are (1) whether claimant is engaged in substantial gainful activity; (2) whether claimant has a medically severe impairment or combination of impairments; (3) whether the impairment is equivalent to one of a number of listed impairments so severe as to preclude substantial gainful activity; (4) whether the impairment prevents the claimant from performing work he performed in the past; and (5) whether claimant is able to do other work in the national economy in view of his age, education, and work experience. 20 C.F.R. Sec. 404.1520(b)-(f), Sec. 416.920(b)-(f). In this case, the ALJ determined that claimant did not have a medically severe impairment or combination of impairments, thus concluding his evaluation at step two. Claimant contends that this constituted error. The Supreme Court has recently stated,
 
 
 12
 The claimant first must bear the burden at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work. If the process ends at step two, the burden of proof never shifts to the Secretary.
 
 
 13
 Bowen v. Yuckert, 482 U.S. 137, 146-47 n. 5 (1987) (emphasis added). As previously discussed, the claimant failed to meet this burden, and the ALJ was therefore correct in concluding his evaluation at step two.
 
 
 14
 Claimant further contends that the ALJ was under a duty to obtain the opinion and testimony of a vocational expert regarding claimant's ability to work. We disagree. Only after a determination that claimant suffers from an impairment or combination of impairments severe enough to preclude her from returning to her prior work activity, is the ALJ under obligation to make an age, education, and experience inquiry to determine what other employment is available to the claimant in the national economy. See Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 776 (10th Cir.1990); Channel v. Heckler, 747 F.2d 577, 580 (10th Cir.1984). Due to the ALJ's determination that claimant could return to her former work activities or engage in other basic work activities, he was under no obligation to seek additional information from a vocational expert.
 
 
 15
 Finally, claimant takes exception with the ALJ's assessment that her complaints of pain lacked credibility. " 'To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.' " Brown v. Bowen, 801 F.2d 361, 362-63 (10th Cir.1986) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir.1983)). This court has stated, "if an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence." Luna v. Bowen, 834 F.2d 161, 164 (10th Cir.1987) (emphasis in original). "[T]he decision maker must consider all the evidence presented that could reasonably produce the pain alleged once a claimant demonstrates a pain-causing impairment. " Id. at 165 (emphasis added). This court in Luna sets forth the factors to be considered when determining a claimant's credibility regarding subjective complaints of pain as (1) claimant's persistent attempts to find relief for his pain; (2) claimant's willingness to accept prescribed treatments; (3) claimant's use of aids in walking such as crutches or a cane; (4) claimant's regular visits to a doctor; and (5) possibility that claimant suffers some psychological as well as physical problem. Id. at 165-66.
 
 
 16
 In his report, the ALJ acknowledged that since claimant failed to prove her claims of disability through objective medical evidence, her credibility, when considering her subjective complaints, was of "the utmost importance." Rec. Vol. I, Decision, at 15. The ALJ concluded that both of claimant's work periods, as an electrician's helper and as a cook, occurred after her alleged disability onset date of December 1, 1983. He further noted that claimant did not seek any medical treatment at all from August 1983, until September 1985, at which time she sought treatment for a jogging injury. As noted by the ALJ, jogging is not an activity normally engaged in by disabled persons or persons experiencing disabling pain. Claimant also did not seek any medical attention from April 1986 to August 1987. Although claimant accuses the ALJ of conducting a "sit and squirm" test at the time of claimant's hearing, the record indicates the ALJ fairly considered claimant's complaints of pain in relation to her behavior and demeanor at the hearing.
 
 
 17
 Claimant was observed closely during the hearing. She was articulate, had no observable difficulty in comprehending questions, paid close attention to the procedure, and no problems with concentration or memory were appreciated. She used her hands often and without difficulty in expressing herself during the hearing, did not complain of pain or appear to be experiencing pain or discomfort. In fact, she appeared to be relaxed and comfortable throughout the hearing. Claimant did not exhibit any signs of difficulty or discomfort in walking, standing, sitting, or arising from a seated position. She stood erect, walked with a normal gait, and although she stated she used a cane at home, did not require an assistive device to ambulate at the hearing, and did not display an observable limp. At the conclusion of the hearing, claimant arose from her chair without hesitation or assistance and walked from the hearing room.
 
 
 18
 Rec.Vol. I, Decision at 15.
 
 
 19
 The ALJ's observations were well-founded and comprised of the elements necessary to fully evaluate claimant's credibility. This, combined with the lack of objective medical evidence, supports the ALJ's conclusion that claimant's complaints of pain were not credible. See Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir.1990). We thus conclude that the Secretary was correct in finding claimant not disabled and that his conclusion was amply supported by substantial evidence.
 
 
 20
 The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3