**Daniel W. BAUGHMAN, Plaintiff,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 88–1344–T.

United States District Court,
D. Kansas.

July 17, 1990.

Jack Shelton, Wichita, Kan., for plantiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court upon defendant's motion to affirm the Secretary's denial of disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401–33 (1982 & Supp. IV 1986), and also to affirm the denial of supplemental security income benefits under Title XVI of the Act, 42 U.S.C. § 1381–83c (1982 & Supp. IV 1986). Plaintiff filed his applications for disability benefits on November 10, 1986. These applications were denied initially and upon reconsideration. Following a hearing, the administrative law judge ("ALJ") determined that plaintiff was not "disabled" within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(1)(A). The Appeals Counsel affirmed this determination, which therefore stands as a final decision of the Secretary. Review by this court is authorized under 42 U.S.C. §§ 405(g) and 1383(c)(3).

The standard of review in this case is established by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989). It is not the duty of the court to reweigh the evidence, or substitute its decision for that of the ALJ. *Talbot v. Heckler*, 814 F.2d 1456, 1461 (10th Cir.1987). Substantial evidence, however, must be more than a mere scintilla. *Perales*, 402 U.S. at 403, 91 S.Ct. at 1428. This court's determination entails a review of "the record as a whole, and 'the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.'" *Talbot*, 814 F.2d at 1461. (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)). In applying these standards, the court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished. *Dvorak v. Celebrezze*, 345 F.2d 894, 897 (10th Cir. 1965).

The nature of plaintiff's claimed disability is a back condition consisting of a defect in the lumbosacral spine known as "spondylolisthesis." Plaintiff claims to have first experienced pain from this condition on April 9, 1986, after a job related injury to his back. Plaintiff saw his family physician, Dr. Nellis, the day following his accident, but did not tell her of his accident. At his disability hearing, plaintiff testified that he did not inform his family physician of the accident out of fear for his job. Tr. at 36. Plaintiff also began physical therapy shortly after the injury. Tr. at 138–39. During this period of time, plaintiff occasionally had to remain in bed for one to two days at a time. Tr. at 83. He continued working, however, until August 8, 1986, at which time he was laid off due to a reduction in force. Tr. at 27.

On November 6, 1986 plaintiff returned to Dr. Nellis, who referred him to an orthopedist, Dr. Toohey. Dr. Toohey took note of plaintiff's complaint of persistent low back pain dating to the job related injury, but he opined that the condition certainly predated plaintiff's injury and that his job had probably aggravated this problem. Tr. at 118. Dr. Toohey explained the options available to plaintiff, including surgery, but recommended a trial with a spica cast before proceeding with surgery. Tr. at 104, 106, 118. After two weeks in the cast, plaintiff reported a "complete loss of pain," and Dr. Toohey diagnosed him as "completely asymptomatic." Tr. at 106. Dr. Toohey again discussed the options with plaintiff, who elected to proceed with "lumbosacral fusion" surgery.

Between the time of plaintiff's diagnosis and his surgery he attempted to find work, but apparently was repeatedly rejected because of his back condition. Tr. 100–01. Plaintiff was also examined by several consulting physicians for the Social Security Administration, and by a Dr. Mills who confirmed Dr. Toohey's diagnosis of first degree spondylolisthesis. Tr. at 116. In the opinion of Dr. Mills, fusion surgery was not immediately mandatory, but would be sooner ar later. During this period of time plaintiff also took Flexerill, prescribed by Dr. Toohey for pain, and Extra Strength Tylenol. Tr. at 98.

On April 7, 1987 Dr. Toohey again examined plaintiff, who still reported back pain, "particularly with activity." Tr. at 131. Plaintiff underwent surgery on May 20, 1987. After plaintiff's surgery, Dr. Toohey noted improvement on May 29 and on July 10. Tr. at 127. At his hearing in September 1987, plaintiff testified that Dr. Toohey would not release plaintiff to work until July 1988. Tr. at 31, 38. According to plaintiff, Dr. Toohey also advised that plaintiff was not "to bend, lift, stoop, or do anything at all." Tr. at 33. Dr. Toohey confirmed this testimony in a letter dated October 1, 1987. In this letter, Dr. Toohey states:

> [Plaintiff] appears to be relatively improved, at least insofar as his back complaint symptoms ar concerned.
> Certainly Mr. Baughman is unable to perform significant manual labor at this point in time and may well be in the future. I would expect limitation of repeated lifting over 20–30 pounds in the future. Certainly at this point I do not want him to lift at all until he is medically stable. I would consider the onset of his restrictions to coincide with the date I initially saw him [on November 6, 1986].
> I certainly think he will be unable to do *any sort of work* through July 1988.

Tr. at 123 (emphasis added).

The procedure for determining a claimant's disability in a social security hearing is firmly established:

> [T]he claimant bears the burden of proving a disability, as defined by the Social Security Act, that prevents him from engaging in his prior work activity. Once the claimant has established a disability, the burden shifts to the Secretary to show that the claimant retains the ability to do other work activity and that jobs the claimant could perform exist in the national economy.

*Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989) (citations omitted). The ALJ in this case determined that plaintiff was unable to perform his prior work activity, and the court agrees. Thereafter, the ALJ assumed the burden of proving that plaintiff could perform other work activity. The ALJ found that plaintiff was capable of performing either sedentary[1] or light work[2] activity. Tr. at 12.

The ALJ stated that "there are no documented limitations on the claimant's ability to sit, stand, walk or manipulate objects," and that plaintiff "should be capable of performing a full range of both sedentary and light work activity." Tr. at 12. This statement, however, is contradicted by the opinion of the medical doctor who

---

1. The Secretary defines "sedentary work" to involve

 lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

 20 C.F.R. § 416.967(a) (1989).

2. The Secretary defines "light work" to involve lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

 20 C.F.R. § 416.968(b).

performed the surgery, continued to monitor plaintiff's progress, and determined the limitations appropriate for plaintiff's recovery. The ALJ rejected Dr. Toohey's opinion by noting that "[c]linical examinations of the claimant in the fall of 1987 revealed an adequate range of motion and the absence of neurologic deficits." Tr. at 11. By "clinical examinations" the ALJ apparently was referring to the notations of a physical therapist in September 1987. Tr. at 125. The physical therapist observed that plaintiff's "active range of motion of the lumbar spine [was] only slightly limited," but also noted that plaintiff continued to experience periodic discomfort when he sat for too long. Although the observation of this physical therapist is some evidence supporting the ALJ's rejection of Dr. Toohey's conclusions, standing alone it does not rise to the level of the substantial evidence standard governing this court's review. As the ALJ recognized, the burden was upon the Secretary to find by substantial evidence that plaintiff was capable of performing at least sedentary work. In making this finding, the ALJ may not substitute his own judgment for that of medical doctors. *Crozier v. Bowen*, No. 86–1553, slip op. at 6–7 (D.Kan. Oct. 1, 1987) (citing cases). To the contrary, the opinion of plaintiff's treating physician is entitled to substantial weight unless good cause is shown for rejecting it. *Sorenson v. Bowen*, 888 F.2d 706, 711 (10th Cir.1989) (quoting *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir.1988)). The ALJ rejected Dr. Toohey's conclusions for several reasons.

■ First, the ALJ noted that Dr. Toohey did not appear to have considered the vocational factors relevant to plaintiff's ability to work. Thus, the ALJ concluded that Dr. Toohey did not understand the test for disability used by the SSA. Tr. at 13. It is true that Dr. Toohey's opinion does not discuss plaintiff's condition with reference to the criteria used by the Secretary in determining the disability of a claimant. Rather, his opinion primarily addressed the activity to which plaintiff was restricted: plaintiff was not to lift at all until medically stable, and would be unable to work until July 1988. The ALJ also interpreted Dr. Toohey's opinion to mean that plaintiff could not return to his former job doing heavy lifting, as opposed to any sort of work. Tr. at 13. This conclusion, however, is at odds with the doctor's direction that plaintiff do no lifting at all until medically stable. As to plaintiff's ability to perform heavy lifting such as that required in his previous job, Dr. Toohey addressed this issue separately by stating that plaintiff's *future* ability to lift over 20–30 pounds repeatedly would be limited. Tr. at 123. The court cannot agree that Dr. Toohey did not mean what he said.

Finally, the ALJ disbelieved plaintiff's complaints of pain because of a discrepancy between the amount of pain medication prescribed by Dr. Toohey and plaintiff's testimony regarding the amount of medication he took to relieve his pain. The ALJ's credibility determination, however, does little to refute Dr. Toohey's opinion that addressed only plaintiff's *exertional* limitations. *Cf. Williams v. Bowen*, 844 F.2d 748, 752 (10th Cir.1988) (nonexertional limitations include pain); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir.1983) (subjective symptoms such as pain must be evaluated with due consideration of credibility). In essence, the ALJ used his credibility finding regarding plaintiff's complaints of pain as a basis for rejecting Dr. Toohey's finding of plaintiff's exertional restrictions through July 1988.

For purposes of deciding whether a claimant is disabled, the Secretary must consider those impairments that have lasted *"or can be expected to last* for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A) (emphasis added). Dr. Toohey stated that plaintiff would not be able to do any lifting or any sort of work until July 1988. Moreover, this treating physician opined that the onset of plaintiff's disability was on November 6, 1986. The record discloses insufficient evidence to support the ALJ's contrary finding that plaintiff retained a residual functional capacity to engage in either sedentary or light work, both of which would require a *sustained* perform-

ance for jobs of this nature. 20 C.F.R. pt. 404, subpt. p, app. 2, § 200.00(c).

Where the burden is on the Secretary at step five of the disability evaluation process to produce evidence that [plaintiff] can perform other work in the national economy, and the Secretary does not meet that burden and thus does not sufficiently rebut the prima facie case of disability, reversal is appropriate. "[O]utright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose."

*Williams,* 844 F.2d at 760 (quoting *Dollar v. Bowen,* 821 F.2d 530, 534 (10th Cir. 1987)). Accordingly, the court will reverse the decision of the Social Security Administration with directions to award the appropriate benefits for plaintiff between the onset of his disability on November 6, 1986 and July 1988.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion to affirm the decision of the Secretary (Dkt. No. 9) is denied.

IT IS FURTHER ORDERED that plaintiff's motion to reverse the decision of the Secretary (Dkt. No. 13) is granted. The case is hereby remanded to the Social Security Administration for further proceedings consistent with this memorandum and order.