961 F.2d 220
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Harry HAMMON, Jr., Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health & Human
Services, Defendant-Appellee.
 No. 91-7073.
 United States Court of Appeals, Tenth Circuit.
 April 6, 1992.
 
 1
 Before EBEL and BARRETT, Circuit Judges, and KANE,* Senior District Judge.
 
 
 2
 KANE, Senior District Judge.
 
 
 3
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 4
 Plaintiff Harry Hammon, Jr., appeals from an order upholding the Secretary's denial of Plaintiff's application for supplemental security income under the Social Security Act, 42 U.S.C. § 1381a. We reverse and remand for further proceedings.
 
 
 5
 Plaintiff applied for benefits in July 1986, contending he was disabled due to heart problems, arthritis, gout, and emphysema. His application was denied initially and on reconsideration. Following a hearing, an administrative law judge (ALJ) found that Plaintiff was not disabled. The Appeals Council vacated the ALJ's decision and remanded for the ALJ to obtain a consultative psychological evaluation, additional pulmonary function studies, and a consultative examination in internal medicine for the evaluation of arthritis. The Appeals Council also directed the ALJ to consider Dr. Monte McAlester's opinion that Plaintiff is disabled and to evaluate Plaintiff's complaints of pain.
 
 
 6
 The ALJ obtained a consultative psychological evaluation from Dr. Terry Shaw and a consultative examination in internal medicine from Dr. Gordon Strom. Following a second hearing, the ALJ again found that Plaintiff was not disabled. The Appeals Council remanded because the ALJ failed to assess Plaintiff's subjective complaints of pain and failed to complete a Psychiatric Review Technique (PRT) form as required by 20 C.F.R. § 416.920a(d).
 
 
 7
 Without affording Plaintiff a third hearing, the ALJ issued a final decision finding that Plaintiff was not disabled. The ALJ found Plaintiff's allegations of pain to be unsubstantiated. He completed a PRT form. The Appeals Council denied review, and the district court affirmed.
 
 
 8
 To qualify for disability benefits, a claimant must establish a physical or mental impairment expected to result in death or to last for a continuous period of twelve months which prevents the claimant from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The Secretary employs the following five-step process to determine whether a claimant is eligible for disability benefits: 1) Is the claimant currently working? 2) Does the claimant have a severe impairment? 3) Does the impairment meet or equal an impairment listed in Appendix 1? 4) Does the impairment prevent the claimant from performing past relevant work? 5) Does the impairment prevent the claimant from performing other work? 20 C.F.R. § 416.920. The claimant has the burden of proving a disability that prevents him or her from engaging in prior work activity. Once such a showing is made, the burden shifts to the Secretary to show the claimant can perform jobs existing in the national economy. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir.1989).
 
 
 9
 On review, the Secretary's findings of fact are conclusive if supported by substantial evidence. Id. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id.
 
 
 10
 The ALJ found that 1) Plaintiff had not engaged in substantial gainful activity since March 31, 1981; 2) he had impairments consisting of degenerative joint disease of the spine, degenerative changes in the hand with adequate grip strength, borderline intellect, and esophageal spasm with reflux; 3) these impairments are not listed in or medically equivalent to any impairments listed in Appendix 1; and 4) Plaintiff is unable to perform his past relevant work. At Step Five the ALJ considered the facts that Plaintiff had the residual functional capacity to lift and carry twenty pounds, but could not repetitively bend, giving him an exertional capacity for light work; Plaintiff was forty-nine years old; Plaintiff had completed twelfth grade and had a borderline intellect; and Plaintiff had no transferable skills. Based on these findings, the ALJ concluded that the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P.App. 2, Table No. 2 (the "grids"), would direct a conclusion that Plaintiff was not disabled. Finally, after finding that Plaintiff's capacity for a full range of light work had not been significantly compromised by his additional nonexertional limitations, the ALJ used the guidelines as a framework for decision-making and found that Plaintiff was not disabled.
 
 
 11
 Plaintiff contends that the ALJ erred by failing to give specific legitimate reasons why he (the ALJ) did not believe the opinion of treating physicians Drs. Monte R. McAlester and H. Rowland that Plaintiff was disabled. The Secretary is required to give specific, legitimate reasons for rejecting the opinion of a claimant's treating physician and must have good cause for doing so. Reyes v. Bowen, 845 F.2d 242, 244-45 (10th Cir.1988).
 
 
 12
 A treating physician's report may be rejected if it is brief, conclusory, and not supported by medical evidence. Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir.1988). The ALJ stated that he did not rely on Dr. Rowland's opinion because it was not supported by clinical or laboratory findings. This is a specific, legitimate reason for rejecting Dr. Rowland's opinion, and the ALJ had good cause for doing so. The ALJ did not, however, state why he rejected Dr. McAlester's opinion. We therefore conclude that the matter must be remanded so Defendant can address Dr. McAlester's opinion.
 
 
 13
 Plaintiff next contends that the ALJ erred in failing to find at Step Three that Plaintiff had a severe impairment that met or equaled 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. This impairment is met where the claimant has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." Such a finding would establish that Plaintiff is disabled without consideration of age, education, and work experience. § 416.920(d).
 
 
 14
 The ALJ found on the PRT form that Plaintiff's full-scale IQ was seventy-three. Appellant's App.Vol. II at 20. Although Plaintiff's full scale IQ was found to be sixty-five in a 1987 examination, Dr. Shaw found that it was seventy-three in his 1988 examination. Dr. Shaw's report supports the ALJ's finding that Plaintiff does not have the impairment listed in § 12.05C.[1]
 
 
 15
 Finally, Plaintiff argues that the ALJ failed to develop Plaintiff's case, particularly in the area of vocational testimony. Before the original promulgation of the grids in 1978, the Secretary relied on vocational experts to meet the Step Five burden of proving the existence of suitable jobs in the national economy. Gossett v. Bowen, 862 F.2d 802, 806 (10th Cir.1988). The grids obviate the need for such testimony by setting forth rules that identify whether jobs requiring specific combinations of residual functional capacity, age, education, and work experience exist in the national economy. Id. If a claimant's residual functional capacity, age, work experience, and education precisely match a grid category, automatic application of the grids is appropriate. Id.
 
 
 16
 However, "the grids cannot be applied conclusively if a claimant has nonexertional limitations that significantly limit his 'ability to perform the full range of work in a particular [residual functional capacity]' category on a sustained basis." Williams v. Bowen, 844 F.2d 748, 752 (10th Cir.1988) (quoting Teter v. Heckler, 775 F.2d 1104, 1105 (10th Cir.1985)). "[R]esort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments." Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir.1991) (footnote omitted). If nonexertional impairments further limit the range of jobs available to the claimant, then the Secretary must produce a vocational expert to testify that the claimant retains the ability to perform specific jobs which exist in the national economy. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir.1983); see also Channel v. Heckler, 747 F.2d 577, 583 (10th Cir.1984) (per curiam).
 
 
 17
 We understand Plaintiff's argument to be that his nonexertional limitations of pain and mental impairments precluded reliance on the grids and required vocational testimony. The ALJ did not believe that Plaintiff's complaints of pain were supported by his daily activities, medications taken, medical opinions, and medical evidence. Subjective testimony that a claimant suffers pain, alone, is insufficient to establish a disability. Gossett, 862 F.2d at 806. Objective medical evidence must establish an impairment that reasonably could be expected to produce pain, and evidence of the intensity and persistence of the pain must be consistent with the medical findings and signs. Id. An ALJ should also consider factors such as the levels of medications taken and their effectiveness, and the nature of a claimant's daily activities in evaluating the credibility of pain testimony. Hargis, 945 F.2d at 1489.
 
 
 18
 We conclude that substantial evidence does not support the ALJ's evaluation of Plaintiff's complaints of pain. Dr. Strom stated in his June 21, 1988, report that Plaintiff has a history of chest pain probably due to esophageal spasm, mild to moderate degenerative joint disease including degenerative changes of the lumbosacral spine, chronic obstructive pulmonary disease, history compatible with gouty arthritis, mild retardation, and recurrent hemorrhoids. He believed that Plaintiff experiences significant discomfort due to the degenerative changes of the lumbosacral spine. Appellant's App.Vol. II at 214. Plaintiff testified that he takes 3200 milligrams of Motrin[2] a day which helps for a little while but "they don't last long." Appellant's App.Vol. II at 95.
 
 
 19
 However, "[t]he mere presence of some nonexertional pain [does] not automatically preclude reliance on the grids." Ray, 865 F.2d at 225. Rather, the evidence must establish that the pain was severe enough to limit the range of jobs available to the claimant. Id. at 226.
 
 
 20
 Dr. Strom completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) in which he concluded that Plaintiff "had adequate strength but changes in back reflect arthritic changes that would affect average individual." Appellant's App.Vol. II at 228. Dr. Strom believed that Plaintiff's lifting/carrying, standing/walking, and sitting abilities were affected by his impairments. He found that Plaintiff could lift thirty pounds occasionally, could stand or walk one hour total in an eight-hour day, could stand or walk one to two hours without interruption, and could sit eight hours total in an eight-hour day but only for one to two hours without interruption. He further found that Plaintiff's abilities to reach and push or pull are affected by arthritis and limited range of motion in the back. Id. at 228-29. We see no evidence in the record contradicting Dr. Strom's opinion concerning Plaintiff's limitations.
 
 
 21
 "Light work" is defined as lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be little, a job is in the light work category if it requires a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. "To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).
 
 
 22
 Substantial evidence does not support the ALJ's conclusion that Plaintiff has the ability to do substantially all of the activities listed for "light work." In Dr. Strom's opinion, Plaintiff can stand or walk only one hour total in an eight-hour day, and his ability to sit is affected, as is his ability to reach, push, and pull. The case therefore must be remanded so the Secretary can produce vocational testimony or other similar evidence to show Plaintiff can perform jobs available in the national economy.
 
 
 23
 The ALJ did not believe that Plaintiff had a nonexertional mental impairment that significantly compromised his capacity for a full range of light work. Even if a claimant has a severe mental impairment that does not meet a listing in Appendix 1, the Secretary still must do a residual functional capacity assessment. § 416.920a(c)(3).
 
 
 24
 Dr. Shaw completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) form in which he ranked Plaintiff's ability to understand, remember, and carry out simple job instructions as unlimited or very good; ability to follow work rules, maintain personal appearance, behave in an emotionally stable manner, and relate predictably in social situations as good; and ability to relate to coworkers, deal with the public, use judgment, interact with supervisors, function independently, demonstrate reliability, and maintain attention/concentration as fair. However, he thought Plaintiff had poor or no ability to deal with work stresses. He stated that "[d]ue to physical limitations, Mr. Hammon's endurance for stressful situations would be poor." Appellant's App.Vol. II at 209-10. We find no evidence in the record contradicting Dr. Shaw's assessment of Plaintiff's inability to deal with stressful work situations.
 
 
 25
 It is self-evident that an individual with poor or no ability to deal with work stress lacks the capacity to perform a full range of light work. We therefore remand so the ALJ can give full consideration to all relevant facts including expert vocational testimony, if necessary, to determine whether Plaintiff retains the ability to perform specific jobs which exist in the national economy. Plaintiff shall be afforded an evidentiary hearing on remand.[3]
 
 
 26
 The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED, and the cause is REMANDED to the district court to remand the case to the Secretary for further proceedings consistent with this order and judgment.
 
 
 
 *
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 We reject Plaintiff's suggestion that a score of seventy-three would fit within § 12.05C if a standard deviation of plus or minus five is applied. There is nothing in the record indicating that such a standard deviation is appropriate
 
 
 [2]
 This is a nonsteroidal anti-inflammatory agent used to control pain and inflammation. Thirty-two hundred milligrams is the maximum daily dosage. Physicians' Desk Reference (1992) at 2351-53
 
 
 [3]
 In light of our disposition, we do not address Plaintiff's arguments that the second hearing was too short or that he was entitled to a third hearing or an opportunity to comment on the issues to be decided by the ALJ on remand. However, we agree that the ALJ should have afforded Plaintiff an opportunity, at a hearing or otherwise, to comment upon the matters the ALJ was required to consider on remand